■   David Nadasi, Appellant, v Rose Anne Nadel-Nadasi, Respondent. [60 NYS3d 488]—

Appeal and cross appeal from stated portions of a judgment of divorce of the Supreme Court, Westchester County (Charles D. Wood, J.), dated September 16, 2014. The judgment, upon a decision of that court entered March 13, 2014, made after a nonjury trial, and upon an order of that court entered June 18, 2014, inter alia, awarded the defendant a credit in the sum of $135,450 related to the plaintiff's interest in S & M Brokerage Co., Inc., representing 15% of the value of the plaintiff's interest in the business, failed to award the defendant any credit related to a business apartment, credited the defendant with $127,162.50 for allegedly missing funds, equitably distributed life insurance policies and a vehicle, awarded the defendant maintenance in the sum of $12,000 per month for two years after the defendant vacates the marital home or June 1, 2014, whichever is later, $11,000 per month for the following two years, and $10,000 per month for the following two years, with such maintenance obligation terminating upon the defendant's remarriage or the death of either party, directed the plaintiff to pay 100% of the children's add-on expenses and 70% of the defendant's attorney and expert fees, and failed to hold the plaintiff in contempt.

Ordered that the judgment is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof awarding the defendant a credit in the sum of $135,450 related to the plaintiff's interest in S & M Brokerage Co., Inc., representing 15% of the value of the plaintiff's interest in the business, and substituting therefor a provision awarding the defendant a credit in the sum of $225,750 related to the plaintiff's interest in S & M Brokerage Co., Inc., representing 25% of the value of the plaintiff's interest in the business, (2) by adding a provision thereto awarding the defendant a credit in the sum of $90,000 related to the business apartment, and (3) by deleting the provision thereof awarding the defendant maintenance in the sum of $12,000 per month for two years after the defendant vacates the marital home or June 1, 2014, whichever is later, $11,000 per month for the following two years, and $10,000 per month for the following two years, with such maintenance obligation terminating upon the defendant's remarriage or the death of either party, and substituting therefor a provision awarding the defendant maintenance in the sum of $12,000 per month for two years after the defendant vacates the marital home or June 1, 2014, whichever is later, $11,000

per month for the following two years, $10,000 per month for the following two years, $9,000 per month for the following two years, $8,000 per month for the following two years, and $7,000 per month for the following two years, with such maintenance obligation terminating upon the defendant's remarriage or the death of either party; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, with costs to the defendant.

The parties were married on November 11, 1989, and there are three children of the marriage. The plaintiff is a 50% partner in a commodities brokerage firm, earning approximately $1.5 million per year. The defendant stopped working in 1996 to be a homemaker and primary caretaker of the parties' children. The parties separated in May 2010. In July 2011, the plaintiff commenced this action for a divorce and ancillary relief. The matter went to trial on the issues of equitable distribution, child support, and maintenance. In a decision dated March 13, 2014, the Supreme Court, among other things, credited the defendant with 15% of the plaintiff's business interest as valued by a neutral appraiser, totaling the sum of $135,450, and otherwise equally divided the marital estate, with certain credits to each party. The court determined that the plaintiff's interest in a business apartment was his separate property. It awarded the defendant six years of maintenance, decreasing from $12,000 monthly to $10,000 monthly over that period, and directed the plaintiff to pay 100% of the children's add-on expenses other than medical claims denied due to their untimely submission by the defendant. In an order entered June 18, 2014, the court directed the plaintiff to pay 70% of the defendant's counsel and expert fees. Thereafter, a judgment of divorce dated September 16, 2014, was entered, implementing the court's findings. The parties appeal and cross-appeal from stated portions of the judgment.

"The trial court is vested with broad discretion in making an equitable distribution of marital property . . . and unless it can be shown that the court improvidently exercised that discretion, its determination should not be disturbed" (*Gafycz v Gafycz*, 148 AD3d 679, 680 [2017] [internal quotation marks omitted]).

"There is no uniform rule for fixing the value of a going business and the valuation of a business for equitable distribution purposes is an exercise properly with[in] the fact-finding power of the trial court, guided by expert testimony" (*Bricker v Bricker*, 69 AD3d 546, 547 [2010]; *see Burns v Burns*, 84 NY2d 369, 375 [1994]; *Wasserman v Wasserman*, 66 AD3d 880, 882

[2009]). The price fixed by a shareholders' agreement "may be considered as one factor but is not conclusive of the value of the partner's interest" (*Burns v Burns*, 84 NY2d at 375; *see Amodio v Amodio*, 70 NY2d 5, 8 [1987]; *Stubbs v Stubbs*, 41 AD3d 832, 833 [2007]). Whatever valuation method is used "must take into consideration inhibitions on the transfer of the corporate interest resulting from a limited market or contractual provisions" (*Amodio v Amodio*, 70 NY2d at 7). Here, in determining the value of the plaintiff's interest in his business, the Supreme Court properly relied on the report prepared by the neutral appraiser, which applied a 25% discount for the lack of marketability of his interest (*see Greisman v Greisman*, 98 AD3d 1079, 1081 [2012]; *Myers v Myers*, 255 AD2d 711, 713 [1998]; *Ellis v Ellis*, 235 AD2d 1002, 1004 [1997]; *Kalisch v Kalisch*, 184 AD2d 751, 753 [1992]). However, in view of the defendant's indirect contributions to the business as a homemaker and primary caretaker for the parties' three children in this long-term marriage, while forgoing her own career, an award to the defendant of 25% of the value of the plaintiff's interest in the business, totaling the sum of $225,750, would be appropriate (*see* Domestic Relations Law § 236 [B] [5] [d] [7]; *Fields v Fields*, 15 NY3d 158, 162 [2010]; *Arvantides v Arvantides*, 64 NY2d 1033, 1034 [1985]; *Hymowitz v Hymowitz*, 119 AD3d 736, 739 [2014]; *cf. Giokas v Giokas*, 73 AD3d 688, 690 [2010]).

There is a statutory presumption that all property acquired by either spouse during the marriage, unless clearly separate, is marital property, and the party seeking to overcome the presumption has the burden of proving that the property in dispute is separate property (*see* Domestic Relations Law § 236 [B] [1] [c], [d]; *Fields v Fields*, 15 NY3d at 165; *Marshall v Marshall*, 91 AD3d 610, 611 [2012]). The Supreme Court properly determined that the plaintiff had overcome the presumption that his initial 20% interest in the business apartment in Manhattan, purchased a few months after the marriage through Legume Investors, was marital property. Although the plaintiff's separate premarital funds used to purchase his interest had been commingled with marital funds in a joint account, the plaintiff traced the source of the funds with sufficient particularity to rebut the presumption that they were marital property (*see Phillips v Haralick*, 70 AD3d 663, 665 [2010]; *see generally Fields v Fields*, 15 NY3d at 169; *Scher v Scher*, 91 AD3d 842, 846 [2012]; *Masella v Masella*, 67 AD3d 749, 750 [2009]). Further, the court properly determined that the appreciation in value of this interest, due to market forces, remained the plaintiff's separate property (*see* Domestic Rela-

tions Law § 236 [B] [1] [d] [3]; *Zaretsky v Zaretsky*, 66 AD3d 885, 888 [2009]).

However, in connection with a July 1997 refinancing of the apartment, the plaintiff purchased from his business partners an additional 13.33% interest in the apartment, presumably with marital funds (*see* Domestic Relations Law § 236 [B] [1] [c]). This interest was marital property subject to equitable distribution. Accordingly, we modify the judgment to award the defendant a credit in the sum of $90,000, representing one-half of the value of the plaintiff's 13.33% increased interest in the apartment.

The Supreme Court's determination that certain checks cashed or deferred by the plaintiff were marital assets subject to distribution, but that others had been used for marital purposes, rested primarily on a credibility determination, which is entitled to deference (*see Gafycz v Gafycz*, 148 AD3d at 680), and will not be disturbed. Similarly, the court's rejection of the defendant's request to be credited with 75% of these marital assets, upon its determination that intentional secreting of these assets by the plaintiff had not been established (*see generally Michaelessi v Michaelessi*, 59 AD3d 688, 689 [2009]), was based on a credibility determination (*see Gafycz v Gafycz*, 148 AD3d at 680), and will not be disturbed.

The Supreme Court properly distributed as part of the marital estate life insurance policies insuring the parties' children and a vehicle driven by the children (*see Gundlach v Gundlach*, 223 AD2d 942, 944 [1996]), and providently exercised its discretion in distributing these assets equally between the parties (*see Scaramucci v Scaramucci*, 140 AD3d 848, 850 [2016]).

"[T]he amount and duration of maintenance is a matter committed to the sound discretion of the trial court, and every case must be determined on its own unique facts" (*Repetti v Repetti*, 147 AD3d 1094, 1096 [2017] [internal quotation marks omitted]). Factors to be considered include "the standard of living of the parties during the marriage, the income and property of the parties, the distribution of marital property, the duration of the marriage, the health of the parties, the present and future earning capacity of both parties, the ability of the party seeking maintenance to become self-supporting, and the reduced or lost lifetime earning capacity of the party seeking maintenance" (*id.* at 1096-1097 [internal quotation marks omitted]; *see DiPalma v DiPalma*, 112 AD3d 663, 664 [2013]). Here, the Supreme Court awarded the defendant maintenance in the sum of $12,000 per month for two years, $11,000 per month for the following two years, and $10,000 for the following two

years. While the court providently exercised its discretion in setting the amount of the maintenance award, under the circumstances of this case, the court improvidently exercised its discretion in failing to extend the award until the defendant reaches retirement age (*see Carroll v Carroll*, 125 AD3d 710, 711-712 [2015]; *Hymowitz v Hymowitz*, 119 AD3d 736, 742 [2014]). Accordingly, we modify the judgment so as to award the defendant maintenance in the sum of $12,000 per month for two years, $11,000 per month for the following two years, $10,000 per month for the following two years, $9,000 per month for the following two years, $8,000 per month for the following two years, and $7,000 per month for the following two years.

The Supreme Court providently exercised its discretion in directing the plaintiff to pay 100% of the children's add-on expenses other than medical claims denied due to their untimely submission by the defendant (*see* Domestic Relations Law § 240 [1-b] [c] [5], [7]; *Azizo v Azizo*, 51 AD3d 438, 440 [2008]).

In view of the relative financial circumstances of the parties, including the defendant's substantial distributive award, the nature and extent of the services rendered, and the relative merits of the parties' positions at trial, the Supreme Court providently exercised its discretion in awarding the defendant 70% of her attorney and expert fees (*see* Domestic Relations Law § 237 [a]; *Morales v Inzerra*, 98 AD3d 484, 485 [2012]; *Siskind v Siskind*, 89 AD3d 832, 834 [2011]; *Grumet v Grumet*, 37 AD3d 534, 536-537 [2007]).

The plaintiff's contention regarding the sale price of the marital residence is based on matter dehors the record and is not properly before the Court on this appeal (*see Castello v Castello*, 144 AD3d 723, 727 [2016]; *Matter of Neuhauser v Eisenberger*, 77 AD3d 951, 952 [2010]).

To the extent that the defendant raises an argument on appeal regarding her motion to hold the plaintiff in contempt, that motion was not addressed by the Supreme Court and, thus, remains pending and undecided (*see Katz v Katz*, 68 AD2d 536, 542-543 [1979]). Rivera, J.P., Hall, Barros and Brathwaite Nelson, JJ., concur.